UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 06-61748-CIV-ALTONAGA/Turnoff

**F & G RESEARCH, INC.,**

Plaintiff,

vs.

**CREATIVE TECHNOLOGY LIMITED,**

Defendant.

_____/

## ORDER ON SUMMARY JUDGMENT MOTIONS

**THIS CAUSE** came before the Court for a hearing on November 8, 2007, upon Defendant, Creative Technology Limited's ("Creative['s]") Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,313,229 ("Motion") [D.E. 40] and Plaintiff, F & G Research Inc.'s ("F & G['s]") Cross-Motion for Summary Judgment of Direct Infringement, or in the Alternative for Active Inducement of Infringement ("Cross-Motion") [D.E. 49]. The Court has carefully considered the parties' written submissions, the record and applicable law, and the oral arguments presented.

F & G is the owner of the right, title, and interest in and to U.S. Patent No. 5,313,229 ("the '229 patent") [D.E. 41-2] by virtue of an assignment. (*F & G's Complaint* ("*Compl*") [D.E. 1] at ¶ 6). The '229 patent relates to an invention entitled "MOUSE AND METHOD FOR CONCURRENT CURSOR POSITION AND SCROLLING CONTROL." (*Id.*) (emphasis in original). F & G's Complaint alleges that Creative is "willfully and deliberately infringing the '229 patent by distributing and selling within the United States and/or importing into the United States for sale its various lines of scrolling wheel computer mice." (*Compl.* at ¶ 7). Creative now moves for summary judgment on all of F & G's infringement claims. In response, F & G cross-moves for summary judgment in its favor.

Case No. 06-61748-CIV-ALTONAGA/Turnoff

# I. <u>STATEMENT OF FACTS</u>[1]

### *The Patent*

F & G owns by assignment the right to the '229 patent, which was issued on May 17, 1994

for an invention entitled "Mouse and Method for Concurrent Cursor Position and Scrolling Control."

(*See id.* at ¶ 6; *'229 patent*).   The invention consists of a special type of computer mouse that includes

a "supplementary control" for "scrolling."   The '229 patent has 17 claims, which include both

product and method claims.   The Abstract of the '229 patent describes the invention as follows:

> [i]n a manual input device for controlling a cursor on a computer display (*e.g.*, a mouse) a supplementary proportional control device including a spring-loaded lever displaceable from the equilibrium position in either of two directions and protruding out of the mouse housing is provided for concurrently controlling the scrolling operation. The supplementary control signal is generated in response to operation of a lever designed to be driven by the thumb of the same hand which holds the mouse. The control signal varies according to the displacement amount of the lever from its equilibrium position and the displacement direction and thus is used as a scrolling rate and direction control . . . . An associated method is provided for setting the scroll and direction in correspondence to the dominant axis of the cursor's trail[.]

(*'229 patent*).

The product and method claims of the '229 patent involve a computer mouse equipped with

a mechanism (the supplemental control means) that transmits a signal (the supplementary control

signal) to a computer that allows users to scroll through information displayed on a computer screen.

The Summary of the Invention of the '229 patent instructs that the basic object of the invention is

to "provide a mouse which not only enables the user to drive a cursor over a screen of a display

means, but also to smoothly scroll the displayed information at a plurality of speeds and at the same

time to control the cursor position." (*Id.* col. 3, lns. 35-40).

---

[1] Where any material facts are disputed, this is explained and noted.

The '229 patent contains four independent claims: claims 1, 9, 12 and 17. All four claims contain the element "supplementary control means." Claim 12 of the '229 patent, the claim which F & G maintains Creative directly infringes, claims a "method of operating a computer in an interactive manner by a user . . . ." (*Id.* col. 15, lns. 28-29). Claim 12, a means plus function claim,[2] instructs that this method involves "said computer including a display means and a mouse connect [sic] to said computer, said mouse comprising means for generating x-y incremental movement information . . . ," which includes a "supplementary control means for generating a supplemental control signal of variable sign and magnitude under control of said user . . . ." (*Id.* col. 15, lns. 29-31, 36-37). It further instructs that the method comprises "generating scrolling commands to move information[,] items[,] or characters displayed on said display means from said supplementary control signal by operation of said supplementary control means . . . " by way of the following steps:

a) analyzing a trail of said cursor at periodic time intervals;

b) dynamically setting a status variable according to a dominant axis of said cursor trail at said time intervals;

c) according to the status variable determined in step b), setting a scrolling axis to a direction option, said direction options including an up-down option; a left-right option and a [sic] in-out option; and

d) scrolling in a scrolling direction along said scrolling axis determined in step c) according to a sign of said supplementary control signal and the status of said status variable.

---

[2] At oral argument, counsel for F & G contended that Claim 12 was not a means plus function claim as defined by 35 U.S.C. § 112, ¶ 6. This assertion directly conflicts with the same counsel's representation in prior litigation regarding the '229 patent, that claim 12 was a means plus function claim. *See F & G Research, Inc. v. Google Inc.*, 2007 WL 2774031, at * 3 (S.D. Fla. Sep. 21, 2007). The undersigned has previously concluded that claim 12 of the '229 patent is a means plus function claim in light of the applicable statutory and case law and, as discussed in the text of this opinion, F & G has not proffered any reason to call that conclusion into question. *See id.* at *2.

(*Id.* col. 15, lns. 46-61; col. 16, lns. 1-4).

The '229 patent specification discloses the structure of the "supplementary control means:"

> [t]he supplementary control means includes a displaceable element movable by a digit of the hand moving the mouse and having a bounded range of displacement amounts.  The displacement element is moved against a restoring force of a spring means from an equilibrium position in which no displacement signal is generated so as to produce a signal representing the amount of displacement of the displaceable element from its equilibrium position.  The supplementary control means can be a lever projecting out of the housing to be operated by the user's thumb of the same hand with which he or she operates the mouse.

(*Id.* col. 3, lns. 60-68; col. 4, lns. 1-4).

The application for the '229 patent was filed on February 5, 1993.  (*See United States Patent File History for the '229 patent* ("*'229 patent File History*") [D.E. 41-5] at 5).  The United States Patent and Trademark Office ("PTO") initially rejected independent claim 1 and dependent claims 2-11.  (*See id.*).  Claims 5, 10, and 11 included the claim term "supplementary control" and were rejected as unpatentable over prior art, including U.S. Patent No. 5,095,303 [D.E. 41-6] (the "Clark patent").  (*See id.* at 9-10; *Clark patent*).  In rejecting the patent claims containing the term "supplementary control," the PTO stated:

> Claims 5, 10, and 11 are rejected under 35 U.S.C. § 103 as being unpatentable over MacKenzie in view of Casteneda, Lecklider, and Balta as applied to claim 4 above, and further in view of Clark.  Clark teaches a lever (specifically, a dial, ref # 86, which is a lever) protruding laterally from the housing of his input device where the lever is easily accessible by the thumb.

(*'229 patent File History* at 9).

In response to the PTO's objection to these claims, the inventors of the '229 patent distinguished the Clark patent on the ground that it taught a "thumbwheel," in contrast to the "lever" described in the '229 patent:

4

Clark does <u>not</u> teach a lever easily operable by a thumb protruding from the housing, urged into an equilibrium position when not engaged with the digits of a user and movable between extreme limits under spring loading. Instead of a lever Clark teaches a thumbwheel which is described . . . as an "unbounded device[,]" i.e. the thumbwheel is freely rotatable, but ratcheted, so that as it is rotated in a certain direction a particular motion on the display takes place in a certain direction; i.e. if rotation about the x-axis is controlled by the thumbwheel, then rotating the thumbwheel keeps rotating the object on the display about the x-axis, which of course can take place indefinitely as long as the thumbwheel is being rotated . . . [t]hus Clark suggests an <u>alternative structure</u> of the supplementary control device in the mouse.

(*Id.* at 34-35) (emphasis in original).

The prosecution history also indicates that the inventors of the '229 patent amended claims 1 and 9 to distinguish them from prior art by making it clear that the supplementary control device, "can be displaced in either of two directions and that the electronic signal or supplemental control signal produced by displacing the movable body <u>varies with</u> . . . <u>the amount of displacement</u>." (*Id.* at 26) (emphasis in original).

### *The Creative Mouse*

Creative provides digital entertainment products for the personal computer worldwide. (*See Declaration of Francois De Villiers ("De Villiers Decl.")* [D.E. 43] at ¶ 2). Creative also sells a number of scrolling wheel computer mice under the brand name "Creative" in the United States. (*See id.* at ¶ 4). The Creative mice report mouse movement, button actuation, and scroll wheel rotation to the computer's operating system. (*See id.* at ¶ 9). The user can utilize the scroll wheel on the Creative mouse to "scroll" the content on the computer's display screen, with each increment of movement of the scroll wheel causing a fixed increment of movement of the information on the screen. (*See id.* at ¶ 11). The scrolling does not get faster the farther the scroll wheel is rotated. (*See id.* at ¶ 12).

In addition to allowing the user to simply scroll the content on the computer screen using the scroll wheel, the Creative mice also allow a user to execute two additional functions known as the "Autoscroll" and "Zoom" methods. (*See id.* at ¶¶ 5-8). The "Autoscroll" method is embodied in operating systems such as Windows XP and programs such as Internet Explorer 7 (both created by Microsoft Corporation). (*See id.* at ¶ 5). The "Autoscroll" method is activated by depressing the scroll wheel button on the mouse, which causes the content on the screen to scroll automatically. (*See id.*). The method does not involve any rotation or displacement of the mouse scroll wheel. (*See id.* at ¶ 8).

The "Zoom" method is selected by depressing the "CTRL" key on the computer's keyboard and rotating the scroll wheel on the Creative mouse, thereby causing the content on the screen to become larger or smaller. (*See id.* at ¶ 7). The "Zoom" method does not require any movement of the mouse itself. (*See id.*).

***This Litigation***

F & G initiated this lawsuit on November 20, 2006. Creative asserts that it was not aware of the existence or content of the '229 patent until the filing of F & G's lawsuit. (*See id.* at ¶ 13). In its Complaint, F & G alleges that Creative is "willfully and deliberately infringing the '229 patent by distributing and selling within the United States and/or importing into the United States for sale its various lines of scrolling wheel computer mice." (*Compl.* at ¶ 7). Specifically, F & G alleges that Creative is liable for infringement of claim 12 of the '229 patent, either directly or through active inducement.[3]

---

[3] In its Response to Creative's Motion, F & G agrees with Creative that the only claim at issue in this litigation is Claim 12 of the '229 patent. (*See F & G's Response to Creative's Motion* ("*F & G's Response*") [D.E. 48] at n.1 & n.2). F & G also clarifies, however, that in addition to its direct infringement claim, it is asserting a claim for inducement

Creative filed its Motion seeking summary judgment for non-infringement of the '229 patent on August 13, 2007. In response to Creative's Motion, F & G cross-moved for summary judgment on September 5, 2007. The undersigned considers these motions together.

## II. ANALYSIS

### A.   Standard of Review

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) (citations omitted). Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "As to materiality, the substantive

---

of infringement. (*See id.* at n.2). Anticipating F & G's response, Creative raised the arguments in its initial motion as to why Creative is not liable for inducement of infringement or contributory infringement. *See Creative's Motion* at 19-20.

law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"For factual issues to be considered genuine, they must have a real basis in the record . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

**B.     Infringement Analysis**

**1.     Claim Construction**

A determination of patent infringement involves a two-step inquiry. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1996). The first step involves "determining the meaning and scope" of the asserted claim or claims, and the second step entails "comparing the

properly construed claims" to the allegedly infringing device. *Id.* In interpreting the scope of a claim limitation, the court should "look primarily to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence." *Global Maintech Corp. v. I/O Concepts, Inc.*, 179 F. App'x 47, 51 (Fed. Cir. 2006) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-17 (Fed. Cir. 2005)). "The words of the claims themselves define the scope of the invention, and are given their ordinary and customary meaning, unless the patentee has chosen to use terms in some other manner." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002) (citations omitted). Therefore, it is necessary to review the patent specification to determine whether the patentee has assigned any special meaning to claim terms, as the specification is "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The court may also consider the prosecution history, if in evidence, as it "is often of critical significance in determining the meaning of the claims." *Vitronics*, 90 F.3d at 1582.

Creative contends that it is only necessary to construe the term "supplementary control means" in claim 12 of the '229 patent to evaluate F & G's infringement claims and the parties' respective summary judgment motions.[4] For the reasons stated below, the undersigned agrees.

Nevertheless, in its Response, F & G asserts that is unnecessary for the Court to construe this term at all because it is allegedly "superfluous" to the method claimed in claim 12 of the '229 patent. F & G maintains that the method described in claim 12 simply consists of the four steps (a-d)

---

[4] In an earlier action involving the '229 patent, the undersigned addressed the term "supplementary control means" in claim 12. However, due to the specific issues raised in a motion filed in that case, and in an effort to view the facts in the light most favorable to F & G, the nonmovant, the Court accepted F & G's proposed construction for purposes of evaluating the motion without undertaking an independent claim construction.

described at the end of the claim, and quoted on pages 3 and 4 of this order. (*See '229 patent*, col. 15, lns. 53-61; col. 16, lns. 1-4).

According to F & G, the remainder of claim 12 is merely a preamble to the method and is therefore non-limiting. "In general, a preamble limits the [claimed] invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003) (citation and internal quotation marks omitted). F & G contends that the only essential structures in claim 12 are a computer and a mouse, and that the remainder of the claim therefore cannot constitute limitations in the practice of the method.

In determining what constitutes "essential structure" a court must inquire whether the "limitations in the body of the claim rely upon and derive antecedent basis from the preamble . . . ." *Id.* While it is true that "supplementary control means" appears in the preamble of claim 12, the limitation also appears in the method steps themselves. Claim 12 quite clearly describes the method of the claim as "comprising generating scrolling commands to move information[,] items[,] or characters displayed on said display means from said supplementary control signal by operation of *said supplementary control means* . . . ." (*'229 patent*, Col. 15, lns. 46-50) (emphasis added). Moreover, even if this portion of the claim were deemed a preamble, the limited steps which F & G claims constitute the entire method explicitly refer back to this portion of the claim for their antecedent basis. (*See, e.g., id.* at col. 16, lns. 1-4) ("scrolling in a scrolling direction along said scrolling axis determined in step c) according to a sign of said supplementary control signal . . . ."). Supplementary control means, therefore, clearly constitutes an "essential structure" of the claimed method.

In construing "supplementary control means," the undersigned focuses specifically on the structure disclosed in the '229 patent specification. "Generally, particular limitations or embodiments appearing in the specification will not be read into the claims." *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1384 (Fed. Cir. 1998) (quoting *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed. Cir. 1985)). However, 35 U.S.C. § 112, ¶ 6 provides an exception for so-called "means plus function" claims. *See Nomos Corp. v. Brainlab USA, Inc.*, 357 F.3d 1364, 1368 (Fed. Cir. 2004). A means plus function claim is "expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof," and its construction is limited to "the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U .S.C. § 112, ¶ 6; *Intel Corp. v. VIA Techs.,Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) (means plus function claim element limited to "the specific structures disclosed in the specification and their equivalents").

At oral argument in a previous case before the undersigned involving the '229 patent, F & G represented to the Court that claim 12 was a means plus function claim. *See Google Inc.*, 2007 WL 2774031 at * 2. The undersigned agreed and held that claim 12 of the '229 patent is a means plus function claim. *See id* at *3. At oral argument on the instant motions, however, F & G argues that it is not. Notwithstanding F & G's revised position, the undersigned finds no reason to call into question the previous holding.

Claim 12 of the '229 patent describes a "supplementary control means for generating a supplemental control signal of variable sign and magnitude under control of said user . . . ." (*'229 patent*, col. 15, lns. 36-37). "If the word 'means' appears in a claim element in association with a function," courts presume that section 112, ¶ 6 applies. *Micro Chem., Inc. v. Great Plains Chem.*

11

*Co., Inc.*, 194 F.3d 1250, 1257 (Fed. Cir. 1999) (citation omitted). The "presumption collapses, however, if the claim itself recites sufficient structure, material, or acts to perform the claimed function." *Id.* F & G has not articulated any reason why this presumption should be rebutted with respect to claim 12. Moreover, the claim itself does not contain any description of a structure or material sufficient to perform the recited function. Accordingly, the claim element "supplementary control means" is properly evaluated as a means plus function claim under 35 U.S.C. § 112, ¶ 6.

Federal Circuit case law provides the framework for construing a claim limitation expressed in means plus function format. "First, the court must determine the claimed function." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006) (citation omitted). Second, "the court must identify the corresponding structure in the written description of the patent that performs that function." *Id.* According to the text of claim 12, the function performed by the "supplementary control means" is to "generat[e] a supplementary control signal of variable sign and magnitude . . . ." (*'229 patent*, col. 15, lns. 36-38).

The specification of the '229 patent discloses the accompanying structure of the supplementary control means as "a displaceable element movable by a digit of the hand moving the mouse and having a bounded range of displacement amounts . . . [which] . . . is moved against a restoring force of a spring means from an equilibrium position in which no displacement signal is generated so as to produce a signal representing the amount of displacement of the displaceable element from its equilibrium position." (*'229 patent*, col. 3, lns. 61-68). The '229 patent File History emphasizes that this variance in "sign and magnitude" corresponds with the distance of the displacement element from the equilibrium point. For instance, in order to overcome prior art, the inventors of the '229 patent stated that they amended claims 1 and 9 to make it clear "that the

electronic signal or supplemental control signal produced by displacing the movable body <u>varies with</u> . . . <u>the amount of displacement</u>." (*'229 patent File History* at 26) (emphasis in original). Thus, the claim language, in conjunction with the structure disclosed in the specification and the file history, makes it clear that the supplementary control means must consist of a "displaceable element" which is moved "against the restoring force of a spring" within a "bounded range" to create a signal that varies in "sign and magnitude" representing "the amount of displacement" from the element's equilibrium position.

Although the patent specification states that the supplementary control means "can be a lever projecting out of the housing to be operated by the user's thumb of the same hand with which he or she operates the mouse[,]" a lever is, in fact, the only embodiment disclosed in the '229 patent. (*'229 patent*, col. 6, lns. 5-59, Figs. 2a, 2b). In conformity with this description, Figures 2a and 2b of the '229 patent depict the supplementary control means as a spring-loaded, thumb operated lever that can be displaced within a bounded range in two directions along an axis. (*See id.*, Fig. 2a, 2b). Accordingly, "supplementary control means" is properly limited to the only structure disclosed in the patent – a spring-loaded lever. *See Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1377 (Fed. Cir. 2004) (limiting structure of claim element in means plus function claim to the only embodiment disclosed in the patent specification).

For these reasons, the undersigned accepts the following construction of "supplementary controls means:" a spring loaded lever, operated by a digit of the hand, having a bounded range of displacement from a point of equilibrium, which generates a supplementary control signal of variable sign and variable magnitude representing the lever's displacement from the point of equilibrium.

### 2.    Direct Infringement

Once the court has construed the relevant claim limitations, the second step in its analysis is to apply the claims to the accused device. *Applied Med. Res. Corp.*, 448 F.3d at 1332. Creative asserts there is no material issue of fact as to whether it directly infringes claim 12 the '229 patent. In order to show direct infringement, F & G must prove the accused product or process, in this case the Creative mouse, contains elements identical or equivalent to each element set forth in the claim. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).  Applying the construction stated above, the undersigned analyzes whether Creative is liable for direct infringement of claim 12 of the '229 patent.

#### a. Literal Infringement

"'To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims.'" *WMS Gaming, Inc. v. Int'l Game Technology*, 184 F.3d 1339, 1350 (Fed. Cir. 1999) (quoting *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211(Fed. Cir. 1998)).  Thus "'[i]f even one limitation is missing or not met as claimed, there is no literal infringement.'" *Id.* "[I]n order to establish literal infringement of a means-plus-function claim, the patentee must establish that the accused device employs structure identical or equivalent to the structure disclosed in the patent and that the accused device performs the identical function specified in the claim." *Id.* (citations omitted).

As discussed, the method described in claim 12 of the '229 patent requires the use of a supplementary control means. (*See '229 Patent*, col. 15, lns. 46-50).  Creative has submitted undisputed evidence that its mouse utilizes a scroll wheel, an "unbounded" device that reports its rotation to the computer's operating system. (*See De Villiers Decl.* at ¶ 9). The "unbounded" scroll

14

wheel which can be rotated indefinitely is clearly distinguishable from what is taught by the '229 patent, that is, a spring-loaded lever, displaceable only within a bounded range from a point of equilibrium. Moreover, the scrolling of the content on the computer screen generated by the Creative mouse scroll wheel occurs at a constant rate and does not get faster the farther the wheel is rotated. (*See id.* at ¶ 12). This contrasts sharply with the scrolling generated by the spring-loaded lever in the '229 patent, which varies in speed with the amount of displacement of the lever from an equilibrium point. (*See, e.g., '229 patent File History* at 26).

F & G also asserts that two specific functions which can be performed using the Creative mouse scroll wheel, the "Autoscroll" and "Zoom" methods, infringe the method stated in claim 12 of the '229 patent. Again, the "Autoscroll" method is activated by depressing the scroll wheel button on the Creative mouse, which causes the content on the screen to scroll automatically. (*See De Villiers Decl.* at ¶ 5). This method does not involve any movement of the mouse scroll wheel. (*See id.* at ¶ 8). The "Zoom" method is selected by depressing the "CTRL" key on the computer keyboard and rotating the scroll wheel on the mouse, causing the content on the screen to become larger or smaller. (*See id.* at ¶ 7). The "Zoom" method does not involve any movement of the mouse itself. (*See id.* ). The descriptions of these two methods are undisputed as F & G, despite its contention that they are infringing, has not offered any evidence to rebut Creative's description of these methods.

Neither of the methods involves the performance of each of the steps set forth in claim 12 of the '229 patent. The "Autoscroll" method does not involve any movement or displacement of the scroll wheel on the Creative mouse from an equilibrium position. Instead, the method is executed simply by depressing the scroll wheel similar to a button which, in turn, causes the content on the screen to begin scrolling "automatically." (*See De Villiers Decl.* at ¶ 5). This method does not

include "generating scrolling commands . . . by operation of said supplementary control means," as is required by the claim. (*'229 patent*, col. 15, lns. 46-50).

The "Zoom" method does involve generating scrolling commands using a supplementary control means through the Creative mouse scroll wheel rather than the spring-loaded lever taught by the '229 patent. It does not involve any mouse movement, however, and as a result, does not perform the steps of "analyzing a trail of said cursor at periodic time intervals" or "dynamically setting a status variable according to a dominant axis of said cursor trail at said time intervals." (*Id.* col. 15, lns. 53-57). The "Zoom" method cannot, therefore, literally infringe claim 12. *See WMS Gaming, Inc.*, 184 F.3d at 1351.

For the foregoing reasons, the Creative mouse does not literally infringe the '229 patent.

### b. Infringement Under the Doctrine of Equivalents

F & G asserts that even if Creative has not literally infringed the '229 patent, it has done so under the doctrine of equivalents. "Even if one or more of the claim limitations are not literally present in the accused device, thus precluding a finding of literal infringement, the claim may still be held infringed if equivalents of those limitations are present." *Allen Eng'g Corp.*, 299 F.3d at 1345 (citing *Warner-Jenkinson Co.*, 520 U.S. at 24). "'A claim element is equivalently present in an accused device if only 'insubstantial differences' distinguish the missing claim element from the corresponding aspects of the accused device.'" *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1359 (Fed. Cir. 2002) (quoting *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997)). In conducting this inquiry it may be relevant for the court to inquire whether an element of an accused device "'does substantially the same thing in substantially the same way to get substantially the same result' as the claim limitation." *Id.* (quoting *Ethicon*

16

*Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998)).

Before engaging in the inquiry, however, the undersigned addresses Creative's argument that F & G's equivalency theory is precluded by prosecution history estoppel. Specifically, Creative asserts that the inventors of the '229 patent explicitly relinquished a scroll wheel during prosecution, and therefore F & G is not permitted to claim that the scroll wheel on the Creative mouse, and its associated functions, can constitute an equivalent to the spring-loaded lever described in the '229 patent. "[P]rosecution history estoppel limits the broad application of the doctrine of equivalents by barring an equivalents argument for subject matter relinquished when a patent claim is narrowed during prosecution." *Conoco, Inc. v. Energy & Environmental Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002)).

For prosecution history estoppel to apply, it is not necessary that a patentee actually amend a claim in response to a PTO action since "[u]nequivocal assertions or arguments made during prosecution may also create an estoppel." *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1338 (Fed. Cir. 1998) (citing *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993) ("'Thus, an estoppel can be created even when the claim, which is the basis for the assertion of infringement under the doctrine of equivalents, was not amended during prosecution.'")). "To invoke argument-based estoppel, however, the prosecution history must evince a clear and unmistakable surrender of subject matter." *Conoco, Inc.*, 460 F.3d at 1364 (Fed. Cir. 2006) (citation and internal quotation marks omitted). "In determining the scope of what, if any, subject matter has been surrendered, the standard is an objective one: what would a reasonable competitor reading the prosecution history conclude has been surrendered." *Desper Products, Inc.*, 157 F.3d at 1338

(citation omitted).

In response to the PTO's rejection of claims 5, 10, and 11 in the '229 patent application, which included the claim element "supplementary control means," the inventors of the '229 patent explicitly distinguished it from "a thumbwheel," the prior art. (*'229 patent File History* at 34). In relevant part, the inventors clearly stated the lever taught by the '229 patent from the prior art did not include "a thumbwheel," which they described as an "'unbounded device' . . . that as it is rotated in a certain direction[,]" can be rotated "indefinitely as long as the thumbwheel is being rotated." *Id.* at 34-35. This unambiguous statement constitutes the necessary clear disavowal of the type of scroll wheel used in the Creative mouse to sustain a claim of prosecution history estoppel. *See Conoco, Inc.*, 460 F.3d at 1364.

F & G asserts it is not subject to this prosecution history estoppel because claim 12 of the '229 patent, which it is asserting Creative has infringed, was initially allowed by the PTO in the original application. This argument, however, is unavailing. Federal Circuit case law is clear that "[a]ny argument-based estoppel affecting a limitation in one claim will also extend to all claims in which that limitation appears." *Allen Eng'g Corp.*, 299 F.3d at 1350; *accord Southwall Techns., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1584 (Fed. Cir. 1995). Thus, F & G is precluded from claiming direct infringement of claim 12 under the doctrine of equivalents.

As F & G cannot demonstrate that Creative has infringed the claim element "supplementary control means" either literally or by equivalents, Creative is not liable for direct infringement of claim 12 of the '229 patent. *See Warner-Jenkinson Co.*, 520 U.S. at 40. Additionally, since F & G cannot demonstrate that Creative infringed this claim element, which appears in all four independent claims of the '229 patent, Creative cannot be liable for infringement of any claim of the '229 patent,

18

and it is unnecessary for the court to undertake a construction of any additional patent terms. *See Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1302 (Fed. Cir. 2002) ("'[I]t is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to be infringed.'") (quoting *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989)).

### 3.    Active Inducement of Infringement

F & G also asserts that, to the extent Creative has not directly infringed the '229 patent, it is nevertheless liable for active inducement of infringement. Creative contends that no reasonable jury could conclude it is liable for such indirect infringement.

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To succeed on a claim for induced infringement, a plaintiff must first establish direct infringement of its patent and also "'has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements.'" *Anton/Bauer, Inc. v. PAG, Ltd.,* 329 F.3d 1343, 1328-49 (Fed. Cir. 2003) (quoting *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990)).

As a prerequisite to its claim of active inducement of infringement, then, F & G must demonstrate that a third party is directly infringing the '229 patent. *See Dynacore Holdings Corp. v. U.S. Philips Corp,.* 363 F.3d 1263, 1272 (Fed. Cir. 2004) (granting summary judgment as to indirect infringement claims, in part, because plaintiff could not demonstrate any specific instances of direct infringement). As discussed, direct infringement of a method claim, such as claim 12 of the '229 patent, "occurs only when the accused infringer carries out every step as set forth in the claim." *Faroudja Laboratories, Inc. v. Dwin Elec. Co. Inc.*, 1999 WL 111788, at *3 (N.D. Cal.

1999) (citing *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274-75 (Fed. Cir. 1992)); *see also* 35 U.S.C. § 271(a).

F & G maintains that even if the Creative mouse does not directly infringe the claims of the '229 patent by itself, it is nevertheless capable of direct infringement in conjunction with software created by a selection of unspecified third parties. Based on this assertion, F & G contends Creative is liable for active inducement of infringement. In support of its position, F & G has submitted an unsigned summary of expert opinions and a claim infringement analysis prepared by an individual named Jose Luis Franzen, which it claims demonstrates that the Creative mouse is capable of infringing the '229 patent in conjunction with the aforementioned third party software. (*See Report of Jose Luis Franzen* ("*Franzen Report*") [D.E. 48-3]). Setting aside the issue of whether F & G's purported evidence of infringement may be properly considered by the Court,[5] the submission is nevertheless insufficient to sustain F & G's claim of indirect infringement.

Despite its assertions, none of the evidence F & G has presented is sufficient to demonstrate direct infringement by any third party or through any combination of the Creative mouse and a third party's software. As an initial matter, the Franzen Report and its claim construction chart utilize F & G's overly narrow concept of what constitutes the method stated in claim 12 of the '229 patent and contradicts the claim construction conducted by the Court. Accordingly, the Franzen Report's infringement analysis does not persuade. Even setting this issue aside, however, the summary report and its claim chart merely offer expert testimony of how a generic mouse used in conjunction with

---

[5] F & G subsequently submitted an electronically signed declaration from Mr. Franzen [D.E. 55], attesting to his expert qualifications. Creative has requested that the undersigned strike both the summary report and the declaration as improper under Federal Rule of Civil Procedure 26 and the standards for reliability set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Because the draft report and declaration do not allow F & G to sustain its claims, the issue of whether they should be stricken is moot.

an unspecified "software environment" *may* infringe the '229 patent. (*See Franzen Report* at 2-3). The report and chart neglect to even specify what third party or what third party software is purportedly doing the infringing.[6] In the absence of any evidence of direct infringement by a third party, F & G's claims for active inducement of infringement cannot be sustained. *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement" such that indirect infringement "cannot occur without an act of direct infringement").

## III. CONCLUSION

In accordance with the foregoing analysis, it is

**ORDERED AND ADJUDGED** as follows:

1. Creative's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,313, 229 **[D.E. 40]** is **GRANTED**. A final judgment for Creative is entered separately.

2. F & G's Cross-Motion for Summary Judgment of Direct Infringement, or in the Alternative for Active Inducement of Infringement **[D.E. 49]** is **DENIED**.

3. The Clerk of Court is ordered to **CLOSE** this case and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 5th day of February, 2008.

CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE

cc:    Magistrate Judge William C. Turnoff
        counsel of record

---

[6] The Franzen Report includes one vague reference to "Windows," presumably intended to refer to the operating system designed by Microsoft. Beyond that single reference however, it does not identify any specific programs or entities that are alleged to infringe the '229 patent utilizing the Creative mouse.